THOMAS GRAGG *versus* WILLIAM W. BROWN.

At common law, the relation of consignor and factor, with advances from the latter to the former, creates a lien on the goods consigned.

If one having a lien upon goods for advances made by himself, consents to a sale to a purchaser from the owner of the goods, or conceals from the purchaser his claim on the property, he will be estopped to deny the title so acquired.

The action is TRESPASS for the value of a lot of timber upon which the plaintiff claims a lien for advances and commissions, to J. B. Foss, of whom he received the timber.

The verdict was for the plaintiff, and the evidence is reported by APPLETON, J., on a motion for a new trial.

The defendant claims to have purchased the timber of the

owner with the knowledge and consent of the plaintiff. The plaintiff introduced the following receipt:

BANGOR, March 19, 1856.

Received of Thomas Gragg, his note, dated December 21, 1855, on six months, for four hundred and eighty-seven dollars; also his note for five hundred and thirteen dollars, dated January 21, 1856, payable in six months, which notes I agree to pay at maturity, if said Gragg does not sell lumber enough to pay the notes, and said Gragg is to have a commission for selling the lumber.

Signed,                              J. B. Foss.

*Rowe & Bartlett,* counsel for the defendant.

The ·claim set up by the plaintiff is a lien claim for security. Foss had no power to pledge the lumber to the plaintiff. His possession and power were those of a factor. The permit was assigned to him, and the lumber put in his possession as security for advances, with authority to sell. The doctrine that a factor cannot pledge, is settled beyond controversy. 2 Kent's Com., 625–9, and note, and authorities. *Van Amringe* v. *Peabody,* 1 Mason's R., 440; *Kinder* v. *Shaw,* 2 Mass. R., 398; 15 Mass. R., 396; 5 Pick. R., 7; 13 Mass. R., 178.

R. S., ch. 43, limits the rights which it gives factors to pledge, to merchandise shipped.

It will not be contended that Foss could pledge, to any extent beyond his own lien; that he could do any more than transfer the property, with a right to hold it until his own lien claim was paid.

The plaintiff was a dock-keeper. His dock was open for the reception of the lumber of any one who would run it there, and pay the dockage. Three fourths of the lumber which was from time to time deposited in his dock, he had no concern with, except as dock-keeper. With the other one quarter, a portion he bought and sold, and a portion he had authority to sell as agent. Foss had deposited his lumber there, for years, and had given the plaintiff authority to

Gragg *v.* Brown.

sell, as he could, as his agent. The defendant had also deposited his lumber there for years, without giving the plaintiff any such authority. The plaintiff's possession, then, was *prima facie* that of a dock-master, and was not evidence to third persons, of ownership, or of a lien. Though it might be good as against Foss, to uphold the lien, it was not valid against a third party ignorant of the lien claim. It cannot be set up against a purchaser from Foss, without notice, and for value.

Foss had a right to sell. He sold very much the larger portion *of this* lumber, with the knowledge of Gragg; and Gragg allowed the purchasers to take it. One of said sales and delivery was to this defendant, about the same time. There was no refusal on Gragg's part to deliver—no denial of the right to sell until after he had discovered that Foss had failed. He knew when the first sale was made by Foss to Brown, and did not notify him of any claim.

Foss had authority to sell this lumber, and Gragg had not. Foss had been appointed agent of the owners to sell it; that power to sell he could not transfer. Long on Sales, 390; 2 M. & S., 299, 301; 6 Taunt., 147.

The right to sell remained in Foss alone, and his bill of sale passed the owner's title.

*John A. Peters,* counsel for the plaintiff.

This was a case for a jury to say whether they believed one side or the other, and the jury have decided it. That is conclusive.

When the plaintiff received the lumber, the lien attached by the agreement. As the receipt is in short and incomplete terms, it became necessary to show by parol, enough to make it apply.

There was a lien in the plaintiff *by* the contract, and there was one *without* it by law. Bouvier's Law Dictionary, titles lien, factor, &c., &c.

The defendant and plaintiff both claim under Foss. The defendant's bill of sale was from Foss, as his own lumber.

Foss had the control and possession, and sale of the lumber, from the parties of whom he received it, *as his own.*

He had assigned a permit to Hayford & Taylor, as collateral, but they have been paid, and have in no stage of this controversy, interfered. Both claim, therefore, under Foss.

The defendant says the plaintiff knew when he bought; the plaintiff said he did not know for two weeks, or a week after the sales, and forbid the defendant taking the lumber.

It cannot be said that Brown was warranted in buying, for the reason that Gragg allowed Foss to sell.

1. Because any sales of previous years to other persons, had nothing to do with this sale.

2. Because in *all* sales of all years, it did not appear that Foss sold without the plaintiff's assent, and in this case the plaintiff swears he gave no consent, and had no knowledge, till subsequently.

3. Because of the sales of this year the defendant undertakes to show that the plaintiff was consulted, and had knowledge, but the jury have found that in said sales to Brown, for *lumber sued for,* the plaintiff had not knowledge.

4. Because it does not appear that Brown, the defendant, relied on any such a permission by silence, because the defendant swears that the plaintiff had actual knowledge, and the jury have found otherwise.

5. Because the case finds that instead of the plaintiff affirming sales made by Foss this year, he disputed them.

The defendant has had six hundred dollars, and the plaintiff sued for three hundred dollars; only one half.

It was emphatically a case for a jury to say which party was mistaken, and they have done so.

CUTTING, J. The testimony in this case was somewhat conflicting. No question of law was reserved, and we must therefore infer that it was properly administered.

Complaint is made that the jury erred in returning a verdict for the plaintiff. The parties of record were witnesses, and the case must have turned upon the degree of credit

given to the one or the other. In the opinion of the jury, it would seem that the testimony of the plaintiff preponderated. And the question presented is, was their conclusion, under all the circumstances, so erroneous as to call for the interference of the court. The plaintiff, in substance, testified that he made a special contract with *Joseph B. Foss* to receive his lumber into his dock, and to sell the same on commission, and in pursuance thereof advanced to him his three notes, amounting to the sum of $1500, and as security for such advances, was to have a lien on the lumber, and that his sales, previous to the alleged trespass, did not exceed $300. He denies all knowledge of the defendant's purchase from Foss, or that he ever consented to, or ratified the same.

While on the other hand, Foss, admitting the negotiation as to the delivery and sale of the lumber, denies the existence or creation of any lien, or that the contract in that particular was otherwise than expressed in his receipt for the notes of March 19, 1856. And the defendant testifies that the plaintiff was informed of his negotiation for the purchase of the lumber in dispute, and neither then, nor any time at or previous to the sale, made objection or claimed any interest therein adverse to the title of his vender.

Both parties, as appears from their documentary evidence introduced, claim title under Foss, and any interest of third persons, not necessarily intervening in this controversy, must be disregarded. From his testimony we infer the relation of consignor and factor, with advances from the latter to the former, which at common law would create a lien on the goods consigned, and this inference is further sustained by evidence introduced without objection, that such was the custom of the place. The receipt produced, which Foss says was the only contract, is not inconsistent with such instruction, if otherwise, the parol testimony tending to prove that fact should have been objected to, but being in the case without objection, it must have its force and effect.

But it is contended that Foss was only the agent for certain owners, and as such had no authority to pledge the lum-

ber to the plaintiff that he could sell, but not incumber. And to sustain this proposition his testimony is principally relied on. If he was not the owner or invested with ample authority to contract with the plaintiff, then, if the plaintiff has stated truly, as to which the jury were the judges, he presents himself as the willing instrument in the perpetration of a fraud, either for his own benefit or that of his principals, for by giving security on the lumber delivered or to be delivered, he received the plaintiff's notes to the amount of $1500, and as to that act of his agency we hear of no repudiation. And presuming that the jury was properly instructed in matters of law as to Foss' authority, we cannot say that they came to a wrong conclusion. We doubt whether any principle has been disclosed by Foss, against whom, on his evidence, the defendant can maintain an action on his implied warranty of title, if he fails in this suit. If he thinks otherwise, he can test that question.

The whole subject matter in controversy then, is reduced to this. Did the plaintiff know of the defendant's purchase or negotiation to purchase, and did the former consent or conceal from the latter his claim on the property? If so, he would be guilty of a fraud and estopped to deny the defendant's title so acquired. Upon this point the parties of record are directly opposed, and Foss' evidence aids that of the defendant. Various considerations, undoubtedly, were urged by the learned counsel upon the consideration of the jury to induce them to believe the one and discredit the other party, and in view of all the circumstances we cannot say that their verdict was so erroneous as to call for our interposition.

*Motion overruled, and*
*judgment on the verdict.*